Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Michael T. Mason | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 4782 | **DATE** | 12/26/2001 |
| **CASE TITLE** | Bhagwan D. Jain vs. IL Dept. of Public Health | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, defendant's motion for summary judgment [44-1] is granted. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | DEC 27 2001 date docketed | |
| | Docketing to mail notices. | | | SY |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 01 DEC 26 PM 12:49 | 12/26/2001 date mailed notice | |
| KF | courtroom deputy's initials | | KF mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BHAGWAN D. JAIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 98 C 4782 |
| v. ) | |
| ) | |
| ILLINOIS DEPARTMENT OF PUBLIC ) | |
| HEALTH, ) | |
| ) | DOCKETED |
| ) | DEC 27 2001 |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

Bhagwan Jain was four months into a six-month probationary period in the Illinois Department of Public Health's ("IDPH") asbestos program when he was terminated, allegedly for poor performance and unprofessional behavior. In filing this lawsuit, Jain claims that the IDPH discriminated against him because of his race and national origin not only by terminating him, but also by providing him with less training, supervision, and equipment than his non-Indian co-workers. Jain further argues that his termination was also in retaliation for his filing a charge of discrimination with the Equal Employment Opportunity Commission. The IDPH has filed a motion for summary judgment, arguing that Jain does not have any evidence that his working conditions or termination were in any way related to his race or national origin. For the following reasons, we grant the IDPH's motion.[1]

---

[1] In its memorandum in support of its motion for summary judgment, defendant also argues that Jain's claims of discrimination pursuant to 42 U.S.C. § are barred by the 11th Amendment. Jain's response does not dispute this argument, and because defendant is correct, we grant summary judgment on this claim.

**Facts**

The following facts are taken from the parties' Rule 56.1 statements, and are undisputed except where noted. Jain was hired by the IDPH for an Engineer III position in its asbestos program. The job had a six month probationary period, after which an employee would become state certified in asbestos management and control, and qualified to conduct and report on lead and asbestos field inspections. Thus, during the probationary period, employees needed to become familiar with lead and asbestos regulations. Additionally, during the second and third month of probation, employees were expected to audit asbestos training courses offered in the private sector on such things as applying the regulations and proper work practices to be used during asbestos-related activities, and then prepare reports on those courses.

Jain became a probationary employee of the West Chicago Regional Office ("WCRO") of the IDPH on or about December 1, 1997. His supervisor was Gary Flentge. The only other WCRO probationary employee at the time was Bill Johnson, who had begun his probation approximately four months earlier. Johnson and two other employees, Sam Davis and Fortunato Alonzo, were also supervised by Flentge. Davis and Alonzo had previously completed their training and become state certified under a different training program, although they were new hires at the WCRO. Flentge's supervisors were Joe O'Connor, who had hired Jain, and Lee Wohlwend.

During the first three months that Jain worked for the IDPH, he audited four training courses concerning asbestos management and participated in three site inspections accompanied by Bill Johnson and at least one inspection accompanied by Wohlwend. IDPH contends that Jain was told several times by Flentge and others that

2

he was required to prepare and submit a two page form report within ten days of auditing each training class. Jain contends that he was not told about the ten-day deadline until his first performance evaluation at the end of February, 1998. However, Jain does not dispute that he knew the reports were required and that he had not submitted a single report by the time of his evaluation.[2] Further, Jain admits that he had received a copy of the IDPH employee handbook at the time of his hire as well as various IDPH rules and policies, and that the policies required that all written work be completed promptly.

The parties also do not dispute that the IDPH believed that Jain's behavior while an employee was unprofessional and disruptive. During his first month of employment, Jain threatened to resign twice for reasons the IDPH believes demonstrates his unprofessional attitude.[3] After receiving numerous complaints about Jain's behavior during training classes and while on site inspections, Flentge formed the opinion that Jain would not be able to maintain working relationships with co-workers or outside agencies and regulated industries. Flentge also received a complaint that Jain had been verbally abusive to a secretary two weeks after beginning his employment at IDPH.

In February, 1998, Wohlwend began to consider Jain's termination because he

---

[2] Defendant admits that Jain was not provided with a written statement of his work objectives and duties until the first week of January, 1998. However, even after receiving these objectives, Jain did not submit any written work for nearly two more months. Further, Jain admits that at the start of his employment, he received a copy of the WCRO Regional Formats forms, which contained the correct format for submitting reports on audited classes.

[3] Jain first threatened to resign when a secretary was not able to photocopy a large volume of material for him in the time period he requested; Jain could have borrowed the material from the office's reference library. The second threat to resign came when Jain was directed to perform work outside the asbestos program and then bill it to the program. Jain believed the request was unethical because he did not know that such shared funding was a common and accepted practice at the IDPH.

3

did not believe that Jain should become a state certified asbestos employee. At Jain's review on February 23, 1998, Wohlwend and Flentge told him that he was probably not going to be certified, which Jain took to mean he was going to be terminated.[4] Jain was given until the following day to submit a rebuttal to his evaluation, however, from February 24, 1998 until March 4, 1998, Jain did not attend work because of illness.[5]

The IDPH scheduled a pre-disciplinary meeting to consider Jain's termination for the day after he returned to work from his illness. Jain participated in the hearing and was provided one week to respond to the charges against him, which he did. After the hearing, the IDPH determined that Jain should be terminated. His last day of employment was March 27, 1998.

**Legal Analysis**

Summary judgment is appropriate when there are no disputed material facts and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In this case, there are only two disputed facts.[6] First, the parties dispute whether the IDPH informed Jain that he needed to submit his training class reports within ten days. However, this fact is not material for several reasons. Even if Jain denies knowing about the ten day limit, he admits to being on notice that all written work had to be completed promptly and that during his first three months of employment he did not

---

[4]The IDPH does not state the specific reasons it gave Jain for his impending termination, however, it attaches numerous memoranda from Jain's personnel file that document his alleged performance problems.

[5] The IDPH acknowledges that Jain was legitimately ill during his absence, but notes that while out sick, he traveled to the Equal Employment Opportunity Commission and filed a charge of discrimination. Because of his illness, Jain was allowed to submit his rebuttal to his performance evaluation directly to the IDPH's personnel division, which he did on March 2, 1998.

[6] Jain also argues that he was the only IDPH employee not to have a computer for his sole use, but does not deny the IDPH's explanation that Johnson, Davis, and Alonzo also did not have computers when they first began their employment because the agency did not have enough to go around. Thus, we find no dispute of fact with regard to computer usage.

4

submit a single report, despite the fact that they only required filling out a two-page form. Further, as we explain below, the IDPH relied on several other factors in addition to the late reports as the reason for Jain's termination.

Second, the parties dispute Jain's contention that while on a site inspection of a swimming pool owned by an Indian family, Wohlwend made a derogatory comment to Jain about "his countrymen" not understanding technical asbestos regulations. Even though Wohlwend denies making the comment, the dispute does not rise to the level of a material fact. Generally, stray remarks, even if uttered by the ultimate decision maker, will not qualify as direct evidence of discrimination unless they "were related to the employment decision in question." *McCarty v. Kemper Life Ins. Co.*, 924 F.2d 683, 686-7 (7th Cir. 1991), *cited in Fuka v. Thomson Consumer Electronics*, 82 F.3d 1397, 1403 (7th Cir. 1996). In this case, even if Wohlwend did make the remark in question, Jain admits it was the only one he heard. Further, it allegedly occurred in December, 1997, more than two months prior to Wohlwend, O'Connor and Flentge's decision to terminate Jain, and did not have anything to do with the reasons for Jain's termination. The remark was allegedly made during a site inspection, not during any sort of discussion about Jain's qualifications or future at the IDPH. And even if Wohlwend believed that Indians did not possess technical knowledge about asbestos regulations, Jain was not terminated because he lacked knowledge, he was terminated for failure to complete his work on time and unprofessional behavior. Thus, Jain has shown no causal connection between the alleged remark and his later termination.

In arguing that the IDPH is not entitled to summary judgment, Jain first alleges that he has direct evidence of discrimination because the only other Indian employee at

5

the IDPH left in 1998 – the same year Jain did – and only returned in 2000, after Jain filed his lawsuit. Even if we were to attempt to understand Jain's "circumstantial evidence" of direct discrimination,[7] he does not make his case. Jain does not provide any evidence as to Ms. Kaul's situation, the reason she left the IDPH in 1998, or the reason she returned in 2000. Thus, we can make no inference in Jain's favor.

So, after reviewing all the undisputed facts, we must analyze this case according to the indirect method of proof first set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Under the *McDonnell Douglas* approach, Jain must first make a prima facie case of discrimination by showing that; 1) he is a member of a protected class; 2) he was performing his duties satisfactorily; 3) he suffered an adverse employment action; and 4) the IDPH treated similarly situated employees outside of Jain's protected class more favorably. *See Foster v. Arthur Andersen,* 168 F.3d 1029, 1035 (7th Cir. 1998). If Jain succeeds in making a prima facie case, the IDPH must come forth with a legitimate, non-discriminatory reason for its actions. *Adreani v. First Colonial Bankshares Corp.,* 154 F.3d 389, 394 (7th Cir. 1998), *citing Testerman v. EDS Technical Prods. Corp.,* 98 F.3d 297, 302 (7th Cir. 1996). Once it does so, the burden shifts back to Jain to set forth evidence that defendant's reason for its action is pretext, that is, that it is dishonest, or a lie. *See Wolf v. Buss Am., Inc.,* 77 F.3d 914, 919-20 (7th Cir 1996).

In this case, Jain argues that the IDPH discriminated against him by failing to

---

[7] Jain relies on *Radue v. Kimberly-Clark Corp.,* 219 F.3d 612, 616 (7th Cir. 2000), for the proposition that direct, or "smoking gun" evidence of discrimination may be proven circumstantially, but does not explain how Ms. Kaul's situation even constitutes circumstantial evidence of discrimination against him.

give him adequate supervision, training or equipment (although they provided it to non-Indian co-workers), and that defendant discriminated and retaliated against him by terminating his employment. The IDPH argues that Jain cannot make a prima facie case of discrimination because he was not performing his work satisfactorily and because he cannot demonstrate that similarly situated non-Indian employees were treated better than he was, either with respect to their supervision and equipment, or because they were not terminated.

We agree that Jain has failed to demonstrate evidence of adequate performance. Even if we accept his contention that he did not know about the ten day deadline for submitting reports or that he did not have a clear statement of his objectives for the first month of employment, he does not dispute that he did not submit a single report for nearly three months. Jain does not deny that his failure to submit the reports demonstrated unsatisfactory performance, but responds that he did not receive adequate supervision to allow him to complete the reports. However, Jain also does not deny that during his employment, Flentge gave him regular assistance to help him complete his work objectives – more than he provided to probationary employee Johnson, or that by one month into his employment at the latest, he had received all of the IDPH's and WCRO's policies and procedures, as well as a formal statement of his job objectives and duties.

Additionally, Jain does not provide a shred of evidence to contradict the IDPH's argument that his behavior was unprofessional towards other IDPH employees and outside contacts. In sum, the undisputed evidence demonstrates that as a probationary employee, Jain did not fulfill the IDPH's legitimate expectations for his performance.

7

Thus, for this reason alone, we may grant summary judgment for defendant because Jain fails to make a prima facie case of discrimination.

Even if we were to accept that Jain was performing his job adequately, he also fails to demonstrate that similarly situated employees were treated better than he was. Jain argues that all of the employees supervised by Flentge – Davis, Alonzo, and Johnson – were similarly situated to him. However, he does not deny that both Davis and Alonzo had previously completed their probation and training under a different program and were already state certified when Jain was hired. Thus, Johnson, a probationary employee with four months more experience than Jain, was the only employee actually similarly situated to him. *See Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000) (holding that a similarly situated employee is one who had the same supervisor, worked pursuant to the same performance standards, and had engaged in similar conduct without such differentiating circumstances as would distinguish the conduct).

Jain argues that Johnson received better supervision, training, and equipment than he did, and that this preferential treatment allowed Johnson to complete his work adequately, in contrast to Jain. However, again, Jain does not dispute any of the facts concerning Johnson's employment. He admits that Johnson did not have a computer when he first began his probation and that Johnson did not receive as much one-on-one attention or feedback from Flentge as Jain did.[8] Further, he does not deny that the

---

[8] In his Rule 56.1(B) Statement of Additional Undisputed Facts, Jain alleges that Johnson was able to formally participate in training classes during his probation, instead of merely auditing them. It is true that Wohlwend testified that at the very beginning of Johnson's probation, the IDPH may have paid for Johnson to take a training class because of uncertainty about the status of probationary employees. However, Jain does not
(continued...)

8

IDPH did not receive any complaints about Johnson's behavior or attitude while he was a probationary employee. In short, Jain fails to demonstrate that Johnson was treated better than Jain for the same behavior. See Radue, 219 F.3d at 617-18.

The IDPH is entitled to summary judgment because Jain cannot make a prima facie case of discrimination. Additionally, even if Jain did make a prima facie case, he does not have any evidence that the IDPH's reasons for its actions were pretext. Briefly, defendant's legitimate, non-discriminatory reason for terminating Jain was that he demonstrated poor work performance and a lack of professionalism and appropriate behavior. With regard to Jain's argument that the IDPH also discriminated against him by providing him with inadequate training, supervision and equipment, the IDPH argues – and has evidence to prove – that it did not treat Jain any differently than other probationary employees. Jain does not dispute this. He argues that the IDPH's reasons for terminating him were a pretext because Wolhwend testified that he had recommended that Jain be terminated prior to Jain's performance review, and thus, any opportunity the IDPH later provided to Jain to improve his behavior was a sham.

The fact that Wolhwend may have recommended Jain's termination prior to his performance evaluation does not demonstrate that the IDPH's reasons for following through with that termination were pretext. In fact, they were consistent; Wohlwend's reasons for his recommendation as well as the actual reasons Jain was fired were his performance problems and unprofessional behavior. The IDPH gave Jain not one, but

---

(...continued)
dispute that Flentge – who was the direct supervisor of both Jain and Johnson – testified that he refused to allow either of his probationary employees to formally attend training classes because they would not be ready to sit for the licensing exams offered by the courses. Instead, Jain and Johnson were allowed to merely audit the courses in order to obtain the information presented.

9

two opportunities to rebut its assessment of his performance, and finding those rebuttals lacking, it terminated him. Nothing in this scenario hints that the IDPH had another, illegitimate reason for terminating Jain. Thus, even if Jain were able to prove his prima facie case, we would still grant summary judgment for the defendant because Jain provides no evidence to cast doubt on the reasons for his termination.[9]

For the reasons stated above, we grant summary judgment for the defendant. It is so ordered.

Michael T. Mason
United States Magistrate Judge

Dated: December 26, 2001

---

[9] Jain's claim of retaliation must fail as well. In order to demonstrate retaliation, he must show that 1) he engaged in statutorily protected activity; 2) he suffered an adverse employment action; and 3) there is a causal link between the two. See Lalvani v. Cook County, Illinois, 269 F.3d 785 (7th Cir. 2001). In this case, Jain does not deny that he knew the IDPH was considering his termination in early February, 1998, and that none of his supervisors found out that he had filed a charge with the EEOC in March, 1998 until June, several months after he was terminated. Thus, there is no way he can show that his filing of the charge was related to his termination.